## STANDARD ACC. INS. CO. v. VAN ALTENA.
### No. 4956.

Circuit Court of Appeals, Seventh Circuit.
Dec. 12, 1933.

M. U. Hayden, of Detroit, Mich., and Howard A. Hartman, of Milwaukee, Wis., for appellant.

Harold W. Connell, of Milwaukee, Wis., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The action was upon a policy of accident insurance issued in 1912 by appellant, indemnifying appellee's husband "against disability or death effected directly, exclusively and independently of all other causes from accidental bodily injuries, through external and violent means, except when self-inflicted while sane or insane * * *." The verdict and judgment were for appellee, the beneficiary of the policy, for its full face with interest.

The complaint charged that the insured came to his death January 23, 1932, by bodily injuries through external and violent means, and independently of all other causes, by asphyxiation from carbon monoxide gas while taking his automobile out of his garage. The answer denied the charge. It did not specifically set up the defense of suicide save as statement of such defense might be inferred from the general denial of all the allegations of the complaint, one of which is that the death was not caused by any of the means which under the terms of the policy exempted the insurer from liability thereunder, of which means self-infliction of the fatal injuries was one.

At the close of the evidence, upon inquiry by the court, appellant's counsel stated that he wished the issue of suicide to be submitted to the jury, and this was done.

The alleged errors relied upon are: (1) That the court denied appellant's motion for a directed verdict; (2) that the charge to the jury was erroneous and harmful to appellant.

There can be no doubt that there was abundance of evidence from which the jury might rightfully have found that the death was caused by asphyxiation from carbon monoxide gas. As is commonly known, this gas is generated by the running of gas propelled automobile engines. In the forenoon deceased was found dead in his one-car garage, with the engine of his eight-cylinder Buick car running. The garage was closed save that a door connecting it with the laundry of his house was ajar about a foot. His body was found on the garage floor by his wife on her return to the house, which she had left about forty minutes before to do some shopping, leaving him in the house alone. His body presented the cherry red appearance peculiar to carbon monoxide poisoning. The evidence disclosed no other effective cause of death. In our judgment this state of the record not only warranted, but required the conclusion that carbon monoxide gas caused the death.

But, says appellant, the evidence does not exclude all other causes which may have contributed to the injury and death; and if such contributing causes there were, the contract precludes recovery.

If we may conjure up all the various conditions which might have contributed to the injury and death, and defeat recovery because each and all were not anticipated and affirmatively excluded by the evidence, such policies would fall far short of their evidently intended scope and value. If a definite accidental cause of a fatal injury appears, it is not the law that every possibility of a contributing cause must be affirmatively excluded by the evidence before liability on such a contract can be fixed. In the absence of proof of such other contributing cause, the rights under the contract must be determined as though no such contributing cause existed.

But appellant contends that a contributing cause does appear in the fact that the deceased had been suffering from the effects of a very recent surgical operation, and that his resultant condition manifested a contributing cause but for which his death would not have resulted. It is urged that, in all probability, after setting the engine in motion he fainted because of his physical weakness resulting from the operation, and that while he was in this condition the engine continued to run and generated the gas which caused his death.

If, after starting the engine, he fainted, not as a result of the gas but from other causes, and so met his death, doubtless there would be no liability under the policy. But the difficulty with this theory is in the want of evidence to support it. The nearest approach that the record affords is the testimony of some expert witnesses that he might have fainted. It requires no expert to sustain such a proposition. Of course he might have fainted—or have had a heart attack, or an apoplectic stroke, or paralysis, or vertigo, or any one or more of scores of possible disabling contributing conditions.

If the record suggests even the possibility of any such conditions, it tends also to negative them. It appears deceased was sixty-three years old and in active business life until attacked a few months before by a throat affection which proved to be cancer of the larynx; that he was treated at a hospital and the cancer removed about two months preceding the death, and a tube for breathing inserted in his trachea just above the sternum, the tube being still there at the time of his death. It was testified that the cancer was completely eradicated, and that his speedy recovery was well assured; and that in all other respects his health was excellent, without any indication of heart trouble or ailments other than the throat affliction.

But assuming that it was incumbent upon appellee affirmatively to negative all possible contributing causes (which we do not hold), this evidence of his general good health, so immediately preceding his death, would at least raise a fact question for the jury to determine, whether or not there was any such contributing cause.

But it is urged that, since the deceased himself set in motion the instrumentality whereby the gas was generated, the injury and death cannot be ascribed to accidental cause. Many cases are cited by both sides directed to the general proposition involved in this contention; but as they are so directly dependent upon the specific facts of the cases they are not very helpful in the determination of a particular controversy. It may be said that where an injury results from the doing of that which the injured party intended to do and was doing, the injury cannot be said to be accidental. But unless the application of the principle is carefully guarded, it might exclude from the category of accidents many occurrences which really are accidental. Inherent in most accidental happenings is the condition that if the person injured had not, by some act or omission, contributed to the happening, it would not have occurred. In a broad sense this is true of nearly every accident, in that if the person had not been where it occurred he would not have sustained the injury.

This court recently dealt with a similar question in Seipel v. Equitable Life Insurance Co., 59 F.(2d) 544. Seipel, an apparently strong, healthy mechanic, was engaged in putting into place a heavy disc wheel of a motor bus—work with which he was entirely familiar. While engaged in setting the wheel upon the drum, he suddenly let go of it, and it was discovered that an abdominal hernia had developed, in the surgical operation for which the patient died. We held that the claimant under an accident policy similar to that here had not sustained her burden of showing that outside accidental means other than those which the deceased intentionally employed were the efficient cause of his injury, and recovery under the policy was denied.

Assuming that deceased started the engine, the generating of gas in sufficient quantity to cause death cannot be said to have been his intentional act, apart from the ques-

tion of suicide. Deceased doubtless knew that a running automobile engine would generate carbon monoxide gas, which in a small inclosed room might prove fatal. Although he intended to start and did start the engine, it does not follow that he intended to generate in this one-car garage a fatal volume of gas. He had long been accustomed to running automobiles, and drove his machine the previous day on returning from the hospital.

There was no witness to what actually occurred, but it is fairly inferable that he was endeavoring to run the car out of the garage. It seems the weather had been damp and rainy, and that the big garage doors had swelled and stuck and a bar had been placed inside to hold them. The rear of the car was toward the doors. When appellee returned to the house and sensed the presence of some sort of gas, and found the connecting laundry door slightly open, she went through it to the garage and saw him lying on the floor near the front of the car, and she rushed back and found the bar upon the floor, as was also a dusting cloth which ordinarily hung on the wall. She forced one of the doors open, but the other still stuck. That deceased intended going out further appears from the fact that when appellee left the house deceased was in his shirt sleeves and had on house shoes, but when found he had on his high shoes, regular clothes, overcoat, muffler, and hat, and had left a note to his wife saying he would be at the barber shop.

█ The poisonous gas in quantity sufficient to have caused the death constituted "external and violent means" inflicting "accidental bodily injuries" which resulted in the death. Exactly what delayed him in the opening of the garage doors, of course we cannot know. After starting the engine he had evidently gone back, thinking to open the doors without trouble, but did not succeed in so doing; and starting back either to stop the engine or to force his way through the doors by backing the car against them, he had delayed long enough to enable the gas to do its deadly work.

█ Deceased may have been and probably was careless in starting the engine before the outside garage doors were opened, but carelessness of the insured is not such a contributing cause as, within contemplation of the policy, would defeat recovery thereunder. Zurich, etc., Ins. Co. v. Flickinger (C. C. A. 4) 33 F.(2d) 853, 855, 68 A. L. R. 161; Traveler's Ins. Co. v. Randolph, 78 F. 754, 762 (C. C. A. 6).

█ Apart from the issue of suicide, we believe the jury was warranted in concluding from the evidence that this gas, independently of all other causes, was the external and violent means which caused bodily injuries to deceased resulting in his death.

█ Respecting the issue of suicide but little more need be said. Facts bearing thereon have been adverted to. Beyond his disease and operation nothing appears in the evidence which would suggest a motivating reason for suicide. No element of financial disaster, loss of employment, unhappy family relations, or of anything else of that nature is disclosed by the evidence. The prognosis was for early recovery from the operation, and a fair use of his voice. It does not appear that he was depressed. It seems he had pride in his personal appearance, as indicated by his statement the day before as well as on the day of his death of going to the barber shop to have his hair cut and to be shaved. Indeed, in appellant's brief it is not argued that the evidence warranted the conclusion of suicide, and it seems that as a proposition of fact this contention was abandoned.

Appellant makes some suggestion of error in the court's charge respecting the presumption against suicide, but we believe that all the evidence upon the subject disclosed by the record, and wholly apart from any legal presumption, indicates that deceased was not a suicide.

█ We find nothing objectionable in the court's charge. Indeed, the suggested points of attack do not appear to have been sufficiently preserved. At the close of the charge the following took place:

"The Court: Are there any exceptions to be taken to the charge?

"Mr. Hartman: There are. The defendant would like to enter two exceptions to the charge, your Honor; one to the definition of 'accidental' in connection with that clause of the policy calling for external violent means, and, the other, as to the instruction that the presumption at least as applied to the facts in this case is that the death would either be natural or accidental.

"The Court: Rather than suicidal. That is what I said. I intended to convey to the jury the idea that the presumption is against suicidal death. Now, is that right?

"Mr. Hartman: I concede there is that presumption, but I except to it under the facts in this case. I take the position the

presumption drops out under the evidence in this case.

"The Court: On which one rests the burden of establishing suicide?

"Mr. Hartman: The defendant.

"The Court: That presumption must be overcome upon one or the other sides of the evidence."

Nothing was pointed out, as is required, to indicate in what respect the definition of "accidental," as given, was erroneous, and as to the exception on the other proposition, this seems to have been abandoned upon the court's explanation as to the intended scope of the charge thereon.

Being of opinion that no substantial error appears, the judgment is affirmed.