252 P.2d 1056

McDOWELL et ux. v. GEOKAN et ux.

No. 7620.

Supreme Court of Idaho.

Jan. 28, 1953.

Donart & Donart, Weiser, C. Ben Martin, Boise, for appellants.

Hawley & Marcus, Boise, R. H. Remaklus, Cascade, for respondents.

GIVENS, Justice.

May 24, 1947, respondents leased to appellants, by written contract, some 326.78 acres in Townships 22 North, Ranges 7 and 8 East of the Boise Meridian, on the South Fork of Salmon River, for five years. Respondents were to furnish 100 tons of hay, 100 head of cattle, 12 horses and four mules and the farming implements and equipment on the property and pay $1,000 annually towards operation costs. Appellants were to farm the property in the farmerlike, neighborhood practice, surrender possession at the termination of the lease period—wear and tear excepted—furnish 150 head of cattle and not sublet, and in case of default, pay attorney's fees.

Respondents and appellants were to be equally liable for taxes and seed; crops and cattle to be equally divided at the termination of the lease.

Respondents had a permit from the Forest Service to graze a certain number of cattle on the Payette National Forest, within the confines of which the real property is located. The road to the neighborhood of the ranch, a sparsely settled section in game

country, is generally closed to vehicular traffic by snow on the intervening seven or eight thousand-foot summit from November to June.

Respondents' permit was not mentioned in the lease. After appellants brought their cattle from the Juniper Mountains in the breaks of the Owyhee River by trail, truck and train to the ranch about July 7, the Forest Service officials notified both parties the cattle could not stay, but had to be taken off the reserve because they did not belong to respondents, and gave temporary permission to wait until the next spring to take them out.

Respondents evidently took repossession of the ranch about April 5, 1948, having brought this suit against appellants March 23, for repossession and damages, in the original complaint, of $9,250 and $1500 attorney's fees and in the nominated amended complaint, for an additional $4,860 for failure to properly farm and care for the place and respondents' cattle, and consequent waste.

Appellants' amended answer denied any breach or failure to comply with the lease, and alleged respondents had induced appellants to enter into the lease by false representations that appellants' cattle could be grazed in the Forest reserve under respondents' permit, alleging respondents knew this could not be done when the lease was executed, but had not so informed appellants; sought damages for the consequent expenses in bringing their cattle in to the ranch and expense and loss of cows and calves from having to take them out in the early spring in inclement weather when the cows were calving, in the amount of $12,313.09.

The jury returned a verdict in favor of respondents for $3,000.

By stipulation, the amended answer and cross-complaint were considered denied. Accordingly, respondents countered appellants' contention of false representations by asserting appellants knew they would have to transfer their cattle to respondents and had so agreed prior to the execution of the lease, though such agreement was not in the lease.

On the appeal from the judgment, appellants assign four errors, which we do not take up in the order presented in the brief, the first considered by us being:

## "II.

"The Court erred in overruling the objection of the defendants to the admission of oral evidence to the effect that before the lease was signed the plaintiffs informed the defendants that the defendants would be required to execute in favor of the plaintiffs a Bill of Sale of all of their cattle in that the oral evidence so introduced varied the terms of the written lease and required the defendants not only to give a Bill of Sale of their cattle to the plaintiffs but to join in the perpetration

of a fraud against the Forest Service;"

The testimony complained of is as follows:

"A. The next time I met Geokans was between the 15th and 20th of May. They came in there with this lease and wanted us to sign it. I went ahead and explained to Geokans fully that before he could bring in the cattle and run them on the ranch he would have to make preparations and turn in a bill of sale of those cattle to the Forest; and Mr. Parks, a ranger there, told me he would have to do that, and also Mr. Hague—it was all right, he did not have any objection—

"By Mr. Donart: I object to the answer as an attempt to vary the terms of a written lease.

"By the Court: Objection overruled.

"Q. Just proceed. A. And we thought everything was all right; that the cattle were going to be split fifty-fifty when the calves were sold and at the end of five years the split would be the same. He says it did not make any difference to him; he would still run the ranch and he would provide a clear title as soon as he could from Herbert Martin on the cattle and before he brought them in.

"Q. When did that conversation take place? A. Between May 15th and 20th.

"Q. Was that prior to the execution of the lease? A. Yes. He agreed to that, or we would never have signed the lease.

"By Mr. Donart: We move to strike after the word yes as not responsive.

"By the Court: It may be stricken." McDowell. Dir.

■ Incidentally, conceding this evidence was inadmissible as varying the lease, it was, nevertheless, admissible as showing that appellants knew of the requirement that respondents must own all the cattle to be grazed under their permit, and hence, respondents were not chargeable with the false representation alleged by appellants. Evidence clearly admissible for one purpose (herein, to show no false representations made) is not rendered inadmissible because not competent on another issue. Absent a requested instruction to limit such evidence (and there was none herein) there was no error in overruling appellants' objections to the extent they were overruled. Town of Meeker v. Fairfield, 25 Colo.App. 187, 136 P. 471; Chicago Lumber Co. v. Cox, 94 Kan. 563, 147 P. 67; Wilcox v. Bear, 140 Wash. 39, 248 P. 58.

"This evidence, moreover, was expressly not offered for the purpose of varying the terms of the written warehouse receipt, but went to the issue of whether the receipt was the only and entire contract between the parties. It was also clearly competent as tending

to show knowledge on the part of defendant as to the value of the property to be stored with it. It is well settled, of course, that 'if evidence is admissible for any purpose, it must be received, even though it may be highly improper for another purpose.' Hatfield v. Levy Bros., 18 Cal.2d 798, 809, 117 P.2d 841, 847." George v. Bekins Van & Storage Co., Cal.App., 196 P. 2d 637 at page 650.

64 C.J. 132, #151 n. 25(a).

Furthermore, there was later evidence of similar import to which there was no objection:

"Q. Did you later sign the lease? A. Yes, on May 24th.

"Q. Was there any discussion at that time between yourself and the Geokans? A. In the meantime my husband went into the Forest Service and told them—

"Q. Were you present there? A. No, sir.

"Q. Just confine your testimony to what you know. A. Well, they came in; and he told me he had been to the Forest Service and they could not bring the cattle in unless they belonged to us.

· "Q. What was the conversation and who were present? A. Mr. and Mrs. Geokan and Mr. McDowell and myself.

"Q. What was the conversation? A. Well, we told them we would have to have a bills of sale of the cattle like the Forest people said we would have to have. They said that was just fine; that it would be alright; that the way the contract read they would be there 5 years and they would get one half of everything sold off the ranch and at the end of 5 years they would get one half and it would be the same thing. They said 'Go ahead and sign the lease and we will go right out and fix a bill of sale'.

"Q. Who said that? A. Mrs. Geokan. They both said that." Mrs. McDowell, Dir.

This rendered the ruling innocuous. Hartley v. Bohrer, 52 Idaho 72 at pages 78–80, 11 P.2d 616; Naccarato v. Village of Priest River, 68 Idaho 368 at page 372, 195 P.2d 370.

■ Second, the court erred in sustaining these objections in the examination of Hague, Forest Supervisor:

"Q. Does your forest or the Forest Service regulations permit the owner of a permit, livestock and land to lease to someone else and operate livestock on the forest under the terms where the lessee gets part of the increase?

"By Mr. Hawley: Objected to as not the best evidence of testing the regulation; and a copy of the regulation would be the best evidence.

"By the Court: Objection sustained.

"Q. Do you know of your own knowledge what is the practise of the Payette National Forest in that respect?

"By Mr. Hawley: We object to that on the ground it is not the best evidence.

"By the Court: Objection sustained.

"By Mr. Donart: The defendants desire to make an offer of proof.

"By the Court: Very well. The jury will be excused from the courtroom until called.

"By the Court: The jury having retired, you may proceed.

"By Mr. Donart: We offer to prove by this witness that it in the practise in the Payette National Forest, and that such was the practise during the entire season of 1947, to refuse to permit a land and livestock owner who is a permittee on the forest to lease his land and livestock to any third party by the terms of which lease the third party took any part of the increase of said livestock in return for the operation of said stock; and thereafter to operate said livestock on the Payette National Forest.

"By Mr. Hawley: We object to the offer upon the grounds and reasons: That it is incompetent, irrelevant and immaterial; second, that it is not the best evidence, the best evidence being

the rules and regulations under which the forestry matters are administered; third, it calls for a conclusion of the witness; and fourth, that it is too vague, indefinite and uncertain.

"By the Court: The offer will be refused.

"By Mr. Donart: We further offer to prove by this witness it is the practise of the Payette National Forest and was such practise during the entire season of 1947, not to allow any permittee to operate on said forest any livestock in which anyone except the permittee has an interest.

"By Mr. Hawley: We offer the same objection.

"By the Court: The offer is also refused."

If the regulation or policy was printed or in writing, such record was the best evidence. In view of the previous evidence, hereafter quoted, we do not understand why the objections were made or sustained, except on the ground the proffered evidence was not the best evidence. The ruling was harmless. There was extended oral evidence to the same effect which had already been given:

"Q. When did you put in the application for a permit for these Geokan cattle? A. Along in March.

"Q. And you were told in March that you would not get that permit unless you owned the cattle? A. That is right. I testified to that.

438

"Q. You were told that as far back as March? A. Yes, sir." McDowell X

"Q. And what did you tell him? A. At that time I told him it would be necessary to provide proof of ownership, in which case we would require a recorded bill of sale.

"Q. Is a recorded bill of sale one of the approved forms of proof of ownership? A. It is.

"Q. But even though you have a recorded bill of sale, if you had information the man did not own the cattle, do you accept the bill of sale as conclusive? A. If we have reason to believe a bill of sale is not bona fide, we are authorized to require additional evidence.

"Q. Can you state whether or not he ever brought in a bill of sale? A. Yes, there was a bill of sale brought in." Hague. Dir.

"Q. Did you make any statement there as to details necessary to switch those cattle? A. Yes. I told him it would be necessary for him to furnish a bill of sale of the cattle or rebrand them with his brand.

\*  \*  \*  \*  \*  \*

"Q. And that was in the early part of May? A. Yes, sir.

"Q. And you said 'It will be necessary, if you are going to bring those cattle in and stay here, to have a recorded bill of sale to you.'? A. Yes,

or prove ownership or put your own brand on the stock.

"Q. Did you not state at that time to Mr. McDowell the arrangements between him and Geokan was none of your concern; that you wanted just a recorded bill of sale? A. No, sir, I did not.

"Q. That was the first discussion you had with Mr. McDowell with respect to that? A. Yes, sir.

"Q. And at that time the only information you gave him was to have a recorded bill of sale? A. After he said he bought the cattle, I told him it would be necessary for him to furnish a bill of sale to the Forest Service and have it recorded." Parks, Forest Ranger.

Also, Defendants' Exhibit 12, a letter from Hague to appellants dated November 13, 1947, stated in regard to this particular situation:

"Forest regulations concerning grazing on the National Forest provide that livestock grazed on the forest under permit must be owned by the person or persons who hold the grazing preference. In the case of the McDowell grazing preference, it has been shown that 124 head of stock, not of McDowell's ownership and for which you assume responsibility, have been grazing on the forest in violation of forest grazing regulations.

"As this fact is now established to a reasonable certainty, you are herewith advised that said stock are in trespass. You are requested to remove said stock from National Forest land at the earliest possible date."

Appellants argue this evidence would have shown if a bill of sale had been given or agreed upon, it would have been a fraud on the Forest Service and even if a bill of sale had been given, under the lease which appellants said gave respondents an interest in the increase of the cattle, they would not have been permitted to run appellants' cattle on the forest. The lease provided for a division of all the cattle, not just the increase.

The record shows cattle belonging to both parties, other than the cattle herein involved, were sold after the lease was executed and the receipts divided.

There was evidence of the efforts all parties made to fix up a bill of sale which would satisfy the Forest officials, but that it did not. No speculation need be engaged in, that if they had attempted to make a bill of sale, they could not have grazed appellants' cattle, because the Forest officials ordered these particular and identical cattle off the forest.

Thus, the essential evidence, i. e., that appellants' cattle could not be grazed under respondents' permit, was in the record and certainly the jury did not lack enlightenment on this feature.

Third, that evidence of respondents' damage subsequent to the filing of the original complaint was improperly admitted because the amendment to the complaint covering same was denominated "amended" instead of "supplemental" complaint. The substance of a pleading rather than the title given it by the pleader is what is important. Adams v. Webb, 104 Okl. 180, 230 P. 878. The trial court had the right to permit the amendment instead of requiring respondents to file a pleading entitled a supplemental complaint. Molyneux v. Twin Falls Canal Co., 54 Idaho 619 at page 636, 35 P.2d 651, 94 A.L.R. 1264. Filing of additional pleadings, regardless of what they are called, to bring the entire subject matter in controversy before the court for adjudication, rests in the discretion of the trial court. Palen v. Palen, 12 Cal.App.2d 357, 55 P.2d 228; Hill v. Bice, 65 Idaho 167 at page 176, 139 P.2d 1010; Petty v. Petty, 66 Idaho 717 at page 721, 168 P.2d 818, 164 A.L.R. 520. Respondents' cause of action was for damages for breach of the lease. Specifications of damage to his real or personal property did not change or enlarge such cause of action. Unfried v. Libert, 20 Idaho 708 at page 720, 119 P. 885; Radermacher v. Eckert, 63 Idaho 531 at pages 541–542, 123 P.2d 426.

440

■ Fourth, that Instruction No. 9[1] as given by the court was incomplete in that it did not define what would constitute a waiver and there was no evidence to which the instruction was applicable. There is evidence that respondents advised appellants it would be necessary for them to give and record a bill of sale to the cattle furnished by them under the terms of the lease before these cattle could be grazed under respondents' permit. Appellants denied they knew of any such requirement or that they were so advised until after their cattle were at respondents' ranch. There is evidence on the part of respondents that after appellants were fully advised of the necessity of this transfer of the cattle to respondents, they offered a bill of sale and actually tendered a bill of sale to the Forest Service officials and respondents, and it was for a time in respondents' possession, but it never was recorded, and though both parties made representations to the Forest Service it was a bona fide bill of sale, it did not satisfy the officials of the Forest Service and they refused to allow appellants to graze their cattle under respondents' permit.

The jury, therefore, might have considered there was evidence that appellants, after they knew this bill of sale was required, did undertake—though ineffectively—to comply therewith. Thus, there was evidence to which Instruction No. 9 was applicable.

Moore v. Harland, 71 Idaho 376, 233 P.2d 429, considered an identical situation. Therein appellant contended:

"* * * the giving of this instruction was not justified by the pleadings and the proof, and that it was error to give such instruction without giving an additional instruction defining the meaning of the phrase 'under the influence of intoxicating liquor.' It is true that the issue of intoxication was not raised in the complaint or in the answer and cross-complaint. However, both parties went into the issue of intoxication without objection. The evidence discloses the drinking of beer

1. "Instruction No. 9

"You are further instructed in connection with the defendants' allegations of misrepresentation by the plaintiffs, that if defendants after acquiring all the facts and full knowledge about the forestry grazing permits held by the plaintiffs, elected to adopt and abide by the lease between the parties, then the defendants were obliged to comply with and perform the lease according to its terms.

"You are further instructed, however, that the defendants by electing to adopt and abide by the lease did not thereby waive their right to recover on account of any damages they may have sustained by reason of the alleged misrepresentations of plaintiffs unless you find from all the evidence that the defendants intended to waive such misrepresentations."

and whiskey by appellant and the ·drinking of beer by respondent a short ·time before the accident. The court was justified under this state of the ·evidence in giving Instruction No. 17. If appellant wished additional instructions on this phase of the case, it was his duty to request same, which was not done. Abbs v. Redmond, 64 Idaho 369, 132 P.2d 1044, and cases therein cited." 71 Idaho at 379, 233 P.2d 431.

■ No request was made by appellants ·for amplification of Instruction No. 9 and, therefore, under the doctrine of the above-·cited case, which has been consistently and continuously announced and adhered to, there is no error of which they may now take advantage. In addition to the au-·thorities cited in Abbs v. Redmond, 64 Idaho 369 at page 375, 132 P.2d 1044, are: Advance-Rumely Thresher Co., Inc., v. Jacobs, 51 Idaho 160 at page 173, 4 P.2d 657; Crystal Dome Oil & Gas Co. v. Savic, 51 Idaho 409 at page 412, 6 P.2d 155; Weed v. Idaho Copper Co., 51 Idaho 737 at page 760, 10 P.2d 613; Evans v. Davidson, 58 Idaho 600 at page 615, 77 P.2d 661; Klam v. Koppel, 63 Idaho 171 at page 184, 118 P.2d 729; Pittman v. Sather, 68 Idaho 29 at page 36, 188 P.2d 600.

The four errors assigned by appellants being thus disposed of, the judgment is affirmed.

Costs awarded to respondents.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.