442 P.2d 26

**Opal WHITLOCK, Plaintiff and Respondent,**

**v.**

**OLD AMERICAN INSURANCE COMPANY, a corporation, Defendant and Appellant.**

**No. 11019.**

Supreme Court of Utah.

June 6, 1968.

Patrick H. Fenton, Cedar City, for defendant and appellant.

J. Harlan Burns, Cedar City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant insurance company appeals from an adverse jury verdict, holding it liable under an accident policy for the death of the plaintiff's husband. Its contention is that he did not die from an accident but from a disease.

In April of 1961, Arthur Whitlock, then 54 years of age, in response to a newspaper advertisement, obtained a policy from the defendant company which provided varying compensation for stated injuries and for loss of life resulting from accident. On September 24, 1962, while the policy

was in force, his son Sidney was taking him from their home in Enterprise to Cedar City when the car was involved in an accident, causing serious injuries to its occupants. Dennis Jones, his son's boy friend, was killed and Mr. Whitlock received a brain concussion, was hemorrhaging and had severe swelling on the right side of his head. He was taken by ambulance to Cedar City, where he was hospitalized. He did not respond to treatment and did not react normally to his family and surroundings, but lingered until October 18, 1962, when he passed away.

■ Viewing the facts just stated in the light favorable to the verdict[1] would seem to establish plaintiff's right to recovery without question. But there is a critical problem in this case arising from defendant's contention that the death of Arthur Whitlock resulted from a disease and not from accident, and that it is therefore not liable because of a provision contained in its policy, Part Three, entitled Exclusions:

> This policy does not cover any loss or disability resulting directly or indirectly, in whole or in part, from (a) any mental or bodily sickness or disease * * *

The evidence bearing on this issue is that the year following the issuance of the policy, early in 1962, Mr. Whitlock was found to have cancer and in May of that year had one lung removed. The prognosis by the doctor was that he felt that Mr. Whitlock had about two years to live. He returned to his home in Enterprise, Utah, and lived a comparatively normal life, with limited activity. It was four months after the operation, while his son was taking him into Cedar City for a physical checkup, that their car was involved in the accident above referred to.

In arguing that the court should have ruled as a matter of law that the plaintiff was precluded from recovery, the defendant places reliance on the foregoing facts, supplemented by the further facts that the death certificate and the report of Dr. Graff, submitted to the defendant, listed cancer of the lung as the cause of death. However, as opposed to this, a later report submitted by the doctor listed brain injury as the cause; and in his testimony at the trial, Dr. Graff contradicted the death certificate by disclaiming any definitive knowledge that the cause of death was lung cancer, and stated in substance that inasmuch as no autopsy was performed, he was not certain as to whether Mr. Whitlock's death resulted from lung cancer, or from the injuries he received in the accident, or a combination of both.

■ Assuming the death certificate and the doctor's first report to be authentic and signed by him, this does not necessarily

---

1. See Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822.

conclusively establish the fact.[2] In Griffin v. Prudential Ins. Co., this court affirmed the rule that even though the information on a death certificate is prima facie evidence of the facts therein stated, it is "elementary that evidence of that type may be explained or contradicted by competent evidence." [3]

The opinion of the doctor is likewise not necessarily conclusive. The information shown upon the death certificate, the doctor's report, and the doctor's testimony are all evidence to be considered by the jury, along with all of the other facts shown in evidence, in determining the cause of death, which determination of fact is their exclusive prerogative. In that connection it is well to have in mind the burden of proof as to the problem here presented: Where a loss occurs which normally would be compensable under an insurance policy, and the company asserts a defense of noncoverage on the ground of an exception stated in the policy, the general rule of insurance law is that this is in the nature of an affirmative defense; and that the company has the burden of proving by a preponderance of the evidence that the loss comes within the exception stated in the policy.[4] Thus if the evidence is such that reasonable minds could remain unpersuaded that the cancer was the proximate cause of Mr. Whitlock's death, then the trial court was justified in refusing to direct such a finding.[5]

The defendant's argument seems to amount to this: Even though a person insured under an accident policy dies following an injury suffered in an accident, if he had any diseased condition which in any degree contributed in causing his death, in that a more robust person would not have died from that injury, recovery is prevented by the exception in its policy. If this narrow restriction were accepted and followed to its logical conclusion it would in practical effect substantially cut away accident insurance coverage for people over middle age. A high percentage of them have some frailty or affliction from which they would die eventually and because of which an injury might more readily result in death than it would to a person not so afflicted. If this would prevent recovery under an accident policy the insurance sold to cover accidents would be but an illusion and acceptance of the premiums a fraud. It is to avoid that unrealistic and unjust result that in enforcing such policies courts insist on taking a fair and practical view of what must have been the intent of the parties in entering into such a contract.

2. See 29 Am.Jur. 991, Ins., Sec. 1936.
3. 102 Utah 563, 133 P.2d 333, 144 A.L.R. 1402.
4. See 29A Am.Jur.Ins., Sec. 1932, also Secs. 1853 and 1854.

5. Cf. statement in Stickle v. Union Pacific R. R. Co., 122 Utah 477, 251 P.2d 867, and cases therein cited.

In the usual situation the insured makes application for a policy which is described to him in general terms. He seldom sees it until it is issued and delivered to him. He is not acquainted with its numerous refinements and particularly the exclusions from coverage. For this reason the rule of strictissimi juris has been applied almost universally to insurance contracts, giving a liberal construction in favor of the insured toward the coverage which the insured reasonably could assume he is buying and for which he pays his premium. We have heretofore held that the insured is entitled to the broadest coverage he could reasonably understand from the policy.[6]

It is appreciated that insurance companies in issuing these accident policies make perfectly legitimate efforts to so word them as to exclude death caused by disease and to cover only death caused by accident. Notwithstanding differences in wording in attempting to accomplish that objective, it is generally held that insofar as coverage for accident is concerned, the insurer takes the insured as he is; that even though he may have some diseased condition which would eventually result in his death, or that the injury would not have resulted in death to a more robust person, if an accident occurs which hastens his death, recovery can be had under the policy. The critical question to be determined is whether the real and efficient cause, or as sometimes stated, the proximate cause of death was the disease, or the accident,[7] and where the evidence would reasonably permit a finding either way, the issue is for the jury.

Instructive in the instant situation is the case of Browning v. Equitable Life Assurance Society,[8] in which the then justices of this court discussed the problem at length. They made a distinction between a diseased condition which is the real and efficient cause of an injury as compared to where the diseased condition exists, but it was the accident which produced the injury. They affirmed recovery under an accident policy even though there was a pre-existing diseased condition. In the decision on rehearing, Justice Larson speaking for the court quoted with approval from Thornton v. Travelers' Ins. Co., 116 Ga. 121, 42 S.E. 287, 94 Am.St.Rep. 99, wherein it was pointed out that if the diseased condition of the insured did not *contribute in bringing about the accident* and injury, but merely aggravated the consequences of it, the plaintiff was entitled to recover.

6. Jorgensen v. Hartford Fire Ins. Co., 13 Utah 2d 303, 373 P.2d 580 (1962).
7. Hassing v. Mutual Life Ins. Co., 108 Utah 198, 159 P.2d 117 (1945) and cases cited therein; Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459 (1903); Kundiger v. Prudential Ins. Co. of America, 219 Minn. 25, 17 N.W.2d 49 (1944). See also Dienes v. Safeco Life Ins. Co., 21 Utah 2d 147, 442 P.2d 468 (1968).
8. 94 Utah 532, 72 P.2d 1060, 1061, on rehearing 94 Utah 570, 80 P.2d 348.

**136**

The following year in the case of Lee v. New York Life Insurance Co.,[9] dealing with the same problem although involving a fact situation somewhat different from ours, Justice Folland speaking for the court, stated the rule which has application here:

> The rule, as we believe it to be on the facts which the jury was justified in finding, is that where an accidental injury sets in motion or starts activity of a latent or dormant disease and such disease contributes to the death after having been so precipitated by the accident, the disease is not a direct or indirect cause of death, nor a contributing cause within the meaning of the terms of the policy, but the accident which started the mischief and precipitated the condition resulting in death is the sole cause of death.

A case supporting this view which is close to our own on its facts is Brooks v. Metropolitan Life Insurance Co.[10] Even though the deceased had had incurable cancer the court stated that the presence of such a pre-existing disease would not relieve the insurer from liability if the accident was the prime or moving cause of the death. In Gennari v. Prudential Ins. Co. of America[11] the defendant company claimed that the death was caused by a prior condition of hypertensive cardiovascular disease and arteriosclerosis. The court stated that "It is well settled that although a person may have a weakened body * * * as the result of * * * disease, nonetheless if death is directly caused by * * * accidental means * * * recovery may be had * * * if he dies by reason of it, even if he would not have died if his previous health had been different. In such event the condition of previous health is merely a predisposing and remote cause and not the direct, proximate cause, as contemplated by the policy, notwithstanding such condition might have cooperated, concurred in and contributed to death."

In the case of Hooper v. Standard Life & Accident Ins. Co.[12] the Supreme Court of Missouri, in a case involving a fact situation somewhat analogous to the present case, held that:

> Notwithstanding Hooper was fatally diseased in heart and brain, and notwithstanding his death was from apoplexy, yet if he accidentally fell in the car and

9. 95 Utah 445, 82 P.2d 178.
10. 27 Cal.2d 305, 163 P.2d 689. This case was cited and followed in Stokes v. Police & Firemen's Insurance Ass'n, 109 Cal. App.2d Supp. 928, 243 P.2d 144, where the court stated: "Since the court here found as a fact that the accident was the prime and moving cause of death (the pre-existing heart disease only contributing) it cannot be said as a matter of law, in interpreting the provisions of the policy and the evidence, that the death of Stokes was caused in whole or in part by any pre-existing heart disease."
11. (Mo.1960), 335 S.W.2d 55.
12. 166 Mo.App. 209, 148 S.W. 116.

ruptured a blood vessel, which caused the apoplectic stroke, his death would be counted as accidental. For, if a man is so afflicted that he will die from such affliction, within a few hours, yet if by some accidental means, his death is caused sooner, it would be a death from accident.

Under the law as hereinabove set forth, the fact that Mr. Whitlock had cancer from which it was likely he would die in a year or two does not preclude recovery under the accident policy, even though it may be and probably was the fact that his system did not have the resistance to the injury and he may have died earlier than a person in better health would have done. The critical question was not whether he had an ailment from which he would have died eventually anyway, nor whether the accidental injury would or would not have resulted in death to someone in more robust health. The important fact is that his diseased condition had no causative relation to the accident. If the accidental injury caused his death before he would have died otherwise, it is the accidental injury which is the legal and proximate cause of death. Accepting that as the proper standard, the manner in which the case was submitted to the jury was not unfair to the defendant. On the other hand, the trial court's instructions presented the issues to the jury in a fair and understandable manner and told them plainly that the plaintiff could not recover unless they found that her husband "died as a direct result of injuries received in the accident."

Our disposition of the issues raised as discussed above renders it unnecessary to consider whether the instructions the defendant complains of were properly made part of the record on appeal as they must be before this court may consider them.

Judgment affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.