543 P.2d 841

Robert A. ERIKSON, Plaintiff-Respondent,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, an Insurance Corpora-
tion, Defendant-Appellant.

No. 11833.

Supreme Court of Idaho.

Nov. 20, 1975.

R. Vern Kidwell, Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellant.

G. Rich Andrus, Rigby, Thatcher & Andrus, Rexburg, for respondent.

SHEPARD, Justice.

This is an appeal from a judgment entered on a jury verdict in favor of respondent Robert A. Erikson and against Nationwide Mutual which awarded insurance benefits for loss of sight. The contentions of appellant are that the admission of certain letters from doctors who examined the respondent insured was erroneous, as was the subsequent use of those letters as substantive proof of causation; that jury instructions were erroneous; and that the verdict is not supported by sufficient evidence. We affirm the judgment.

In 1965 Nationwide issued to Erikson an insurance policy providing coverage for stated injuries or death resulting from accident. While that policy was in force in December, 1971, Erikson was riding a snowmobile when he was struck in his right eye by a pine bough, a portion of which entered his eye causing it to bleed and become cloudy. Erikson's son, an optometrist, was present at the scene of the accident and immediately examined respondent's eye. He discovered therein a hemorrhage with an "issue of blood" approximately the diameter of a pencil eraser. Erikson thereafter developed other symptoms of injury and was unable to make use of his right eye, and a few months later the eye progressively deteriorated to the point of total blindness.

Erikson, on his own initiative and at times at the request of the insurer Nationwide, consulted three ophthalmologists and two optometrists. All concurred that he suffered from a central retinal vein occlusion (an obstruction of the main blood vessel from the eye) which rendered him permanently blind in his right eye. All expert witnesses agreed that respondent's eye demonstrated signs of sclerosis or hardening of the veins and arteries in the eye but they differed in their opinions as to whether the accident or the sclerosis was the cause of the retinal occlusion. Erikson filed a claim for benefits with Nationwide which was supported and followed by letters from examining doctors. The claim was ultimately denied and this action results.

Appellant Nationwide asserts error in the admission of two letters from doctors to Nationwide and their later use as substantive evidence of causation. One is a letter from Dr. Anderson who was one of the examining physicians. That letter was written in response to a request by Nationwide. Therein Dr. Anderson stated that he had examined Erikson and had concluded that his loss of vision was "*in all probability* due to the injury sustained when the twig entered the eye." It is passing strange that Dr. Anderson appeared at the trial of this matter as an expert witness on behalf of defendant Nationwide. In contrast to his written opinion, Anderson testified at trial: "I feel that the occlusion is due to his (Erikson's) age and due to arteriosclerotic changes in the veins and arteries of the eye. Usually they go together and as all odds by far, the most common cause." When reminded of his previous written opinion and asked if he had made a false statement to the insurer Nationwide, Anderson "explained": "Well I think it was an emotional outburst. I think I had no idea that we were talking about a claim of this size or this magnitude or this nature."

The second letter, admission of which is assigned as error, was written by Dr. Riek-

hof, also an ophthalmologist. It also was written to Nationwide in response to its request. That letter briefly reviews the history of Erikson's vision, indicates the examination of the eye subsequent to the injury and states "in light of this rather specific history I suppose it is indeed possible that the vascular accident resulted from this injury."

■ Nationwide asserts that there was timely objection to the admission of the letters, that they were hearsay and should not have been admitted. We do not agree. The record is clear in this case that the original introduction of the letters was for the purpose of showing notice and proof of loss to the insurer. Such notice and proof of loss had been denied in Nationwide's answer and left in dispute as an issue at trial. The letters of the doctors to Nationwide were probative and direct evidence of Erikson's compliance with the notice conditions of the policy. It is well established that evidence inadmissible for one purpose may nevertheless be admissible for another purpose. *McDowell v. Geokan*, 73 Idaho 430, 252 P.2d 1056 (1953); 1 Wigmore on Evidence § 13; Bell, Handbook of Evidence for the Idaho Lawyer (2nd Ed.) 18.

■ The record further demonstrates that Nationwide waived any objection it may have had to the use of the contents of the letters as evidence of causation by its later actions. During the course of Dr. Anderson's direct testimony,[1] he was examined on statements made by him in that letter and counsel for Erikson was permitted to cross-examine on that same letter without objection thereto. The introduction of the letter having been proper for one purpose and that purpose having been exceeded, its evidentiary use may not now be limited. *Hartley v. Bohrer*, 52 Idaho 72, 11 P.2d 616 (1932).

■ The letter from Dr. Riekhof presents another problem. Dr. Riekhof was not available for examination at trial. However, the record indicates that counsel for Nationwide affirmatively consented to the substantive use of the contents of that letter on the condition that counsel for Nationwide be allowed to admit three additional letters from the same doctor which were allegedly more favorable to Nationwide. Those additional three letters were admitted in evidence. Thereafter other medical witnesses were examined and cross-examined on the statements made by Dr. Riekhof in all four letters. The letters were properly admitted for the original purpose of showing notice and in view of later proceedings were properly before the jury as substantive evidence as the cause of Erikson's blindness.

Appellant Nationwide next assigns error to certain of the court's jury instructions and also the failure of the court to instruct the jury in accordance with appellant's requested instructions. In essence, Nationwide contends that it was entitled to an instruction stating that the accident must have been the "sole cause or the cause independent of all other causes" in order to find liability within the requirements of the insurance policy. Defendant's instruction was refused and in lieu thereof the court instructed that in order to be the *proximate cause of the injury* it must be shown that the accident is the "dominant cause" although other factors may have existed which also tended to help produce a loss of sight. Appellant asserts error in the use of the term "dominant cause" in contrast with the provisions of the policy that satisfactory proof of injury must have been sustained "as a direct result of an accident . . . directly and independently of all other causes" and the policy provisions excluding from coverage "any loss resulting directly or independently, wholly

---

1. During the plaintiff's case in chief defendant asked and received permission to put on an expert medical witness on behalf of the defendant out of the usual order of proof. Dr. Anderson was that out-of-order witness.

or partly from: (1) disease or bodily infirmity. . . ."

It is a long established precedent of this Court to view insurance contracts in favor of their general objectives rather than on a basis of strict technical interpretation of the language found therein. Where language may be given two meanings, one of which permits recovery and the other does not, it is to be given the construction most favorable to the insured. Stated somewhat differently, an insurance contract is to be construed most favorably to the insured and in such a manner as to provide full coverage for the indicated risks rather than to narrow protection. This Court will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. *Corgatelli v. Globe Life and Acci. Ins. Co.,* 96 Idaho 616, 533 P.2d 737 (1975); *Rollefson v. Lutheran Brotherhood,* 64 Idaho 331, 132 P.2d 758 (1942); *Mayflower Ins. Exchange v. Kosteriva,* 84 Idaho 25, 367 P.2d 572 (1961); *Shields v. Hiram C. Gardner, Inc.,* 92 Idaho 423, 444 P.2d 38 (1968); *Lewis v. Continental Life and Acci. Co.,* 93 Idaho 348, 461 P.2d 243 (1969); *Toevs v. Western Farm Bureau Life Ins. Co.,* 94 Idaho 151, 483 P.2d 682 (1971). Consistent with this view, we believe that the mere fact that a latent disease or bodily infirmity exists prior to accident, upon which the accident acts to precipitate the loss, will not defeat coverage so long as the disease or infirmity appears as a passive ally and the accidental cause predominates. Judge Cardozo put it

well in *Silverstein v. Metropolitan Life Ins. Co.,* 254 N.Y. 81, 171 N.E. 914 (1930) when he stated that:

". . . In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. [Citations omitted.] 'Our guide is the reasonable expectation and purpose of the ordinary business man, when making an ordinary business contract.' [Citations omitted.] A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

Seldom does a loss involve a *sole* cause independent of all other causes as asserted by the appellant. Furthermore, we recognize that there is a plethora of authority in other jurisdictions holding that language in insurance contracts restricting coverage as does the policy here, nevertheless has no greater meaning than the requirement that an accident must be the dominant cause of the injury incurred or the active efficient cause that precipitated the resulting loss.[2] This same rule has been implicitly adopted by this Court in *Rauert v. Loyal Protective Insurance Co. of Boston,* 61 Idaho 677, 106 P.2d 1015 (1940). *Rauert* was a suit for insurance compensation involving a policy with language almost identical to the language at issue herein. There, the trial

2. *Whitlock v. Old American In. Co.,* 21 Utah 2d 131, 442 P.2d 26 (1968); *Browning v. Equitable Life Assur. Soc. of U. S.,* 94 Utah 532, 72 P.2d 1060 (1937); *Lindemann v. General American Life Ins. Co.,* 485 S.W.2d 477 (Mo.App.1972); *Young v. New York Life Ins. Co.,* 221 S.W.2d 843 (Mo.App. 1949); *Beimdiek v. New York Life Ins. Co.,* 183 S.W.2d 379 (Mo.App.1944); *Jacobson v. Mutual Ben. Health and Acc. Ass'n,* 70 N.D. 566, 296 N.W. 545 (1941); *Hendry v. John Hancock Mutual Life Ins. Co.,* 251 So.2d 500 (La.App.1971); *Equitable Life Assurance Society of United States v. Gratiot,* 45 Wyo. 1, 14 P.2d 438 (1932); *Moon v.* *Order of United Commercial Travelers,* 96 Neb. 65, 146 N.W. 1037 (1914). See also: *Federal Life Insurance Co. v. Raley,* 130 Tex. 408, 109 S.W.2d 972 (Tex.App.1937); *Duhon v. Colonial Life and Acc. Ins. Co.,* 277 So.2d 234 (La.App.1973); *Foulkrod v. Standard Acci. Ins. Co.,* 343 Pa. 505, 23 A.2d 430 (1942); *LaBarge v. United Insurance Co.,* 209 Or. 282, 303 P.2d 498 (1956); *Kievit v. Loyal Protective Life Ins.,* 34 N.J. 475, 170 A.2d 22 (1971); *Kundiger v. Prudential Ins. Co. of America,* 219 Minn. 25, 17 N.W.2d 49 (1944); Appleman, Insurance Law and Practice § 392.

court's refusal to give an instruction similar to that requested by appellant herein was sustained. Viewing the instant policy in light of these opinions, we find no error in the refusal of the trial court to give appellant's requested instruction and further find no error in the instructions of the court as given.[3]

We turn now to the principal controversy in this matter which is the appellant's contention that insufficient evidence was introduced to permit and justify a finding that Erikson's blindness resulted from accident. The medical testimony indicates that central retinal vein occlusion, such as that which afflicts Erikson, may be caused by hypertension, glaucoma, infectious disease, arteriosclerosis or trauma. All but arteriosclerosis and trauma were eliminated as possible causative agents of Erikson's blindness. The testimony and position of the expert medical witnesses was diametrically opposed on the question of whether arteriosclerosis or trauma was the proximate cause of respondent's loss.

Erikson's primary expert witness at the trial was Dr. Petty, an ophthalmologist, who when asked his opinion as to the cause of Erikson's problem stated: "My opinion is that certainly the degree of arteriosclerosis that was present has to be considered a factor in the occlusion. It is also my opinion *that very possibly* the trauma to the eye could have precipitated the central retinal vein occlusion." (Emphasis supplied.) That witness cited several professional articles in the field of ophthalmology recognizing trauma as a cause of central retinal vein occlusion and also noted that although Erikson showed signs of sclerosis in his right eye, it was the mildest form of the narrowing of the retinal arteries and normal for a person of Erikson's age. He also stated that this same degree of sclerosis existed in Erikson's otherwise healthy left eye with which Erikson had no problems. In cross-examination he stated that he could not state "with medical certainty" that the occlusion did not have a cause other than trauma. That witness further stated: "Assume he (Erikson) in truth did have a blow to the eye and the blow was transmitted through to the vessels of the retina, on the basis of possibility or *even probability the likelihood* is that this had at least been a contributing cause in the thrombosis (clotting of blood inside the vessel)." An additional expert also called by respondent concurred that the history of trauma and his examination were consistent with the conclusion of Dr. Petty.

Somewhat in the middle ground of this controversy were the letters of Dr. Riekhof introduced by Nationwide. Therein, he qualified his earlier quoted opinion to the effect that the vascular difficulty resulted from the accident by stating that the cause of retinal vein occlusion "usually cannot be determined" and that Erikson's loss "is an unusual complication from any type of trauma."

In contrast, the principal testimony on which appellant relies is that of his witness, Dr. Anderson. Anderson's testimony at trial was that the occlusion was caused by arteriosclerosis, however, as indicated herein that testimony and that witness were severely impeached. In sum, appellant argues that this conflicting testimony establishes no more than a *possible* causal relation between Erikson's blindness and the traumatic injury to his right eye and that the law requires evidence of reasonable medical probability.

The burden upon plaintiffs in actions of this type is to show by a preponderance of the evidence that its theory of causation is more probable than it is not. Appleman, Insurance Law and Practice §§ 12141, 12145; McCormick, Evidence (2nd Ed.) § 337; *Radius v. Travelers Ins. Co.,* 87 F.2d 412 (9th Cir. 1937). Proof of medical *certainty* is not required. *Powesh-*

---

3. We note in passing that appellant's objection to the trial court's refusal to instruct the jury that a defendant corporation is entitled to the same objective deference as a private citizen is without support or merit.

iek County Nat. Bank v. Nationwide Mut.
Ins. Co., 261 Iowa 844, 156 N.W.2d 671
(1968). Neither does the test turn upon
the necessary use of the word "probable"
in the testimony of a witness. The usage
of the words "possible" and "probable" by
medical experts do not always comport
with a legal definition of those terms.
Dean v. Dravo Corp., 95 Idaho 558, 511 P.
2d 1334 (1973). See also, Powers, "After
All, Doctors are Human," 15 Uni. of Flori-
da L.Rev. 464.

The opinion of Dr. Petty that the trau-
ma was *very possibly* the predominate
causative factor need not be taken in its
absolute and literal sense but rather within
the context that those words were spoken.
*Dauphin Deposit Trust Co. v. Lumbermens*
Mut. Cas. Co., 171 Pa.Super. 86, 90 A.2d
349 (1952). His opinion was well-founded
upon medical research, objective examina-
tion of the respondent and his articulated
logical reasons for the exclusion of other
likely causes. Most devastating, however,
to appellant's argument is the testimony of
its own witness (albeit contained in writing
and made prior to his appearance in court)
who was the attending physician and stated
that Erikson's blindness was "in all *proba-
bility* due to the injury sustained when the
twig entered the eye." As previously indi-
cated, that opinion was before the court
and jury as substantive evidence of the
cause of respondent's blindness.

■ It is further suggested that Dr.
Petty's inability to eliminate all other pos-
sible causes of Erikson's blindness consti-
tuted a failure to establish causation. We
do not agree. Such a burden is not placed
upon a plaintiff in a case of this type.
The respondent carried no obligation to
disprove all other theories of causation so
long as he sufficiently established that loss
resulted from accident by a preponderance
of the evidence. *Mutual Ben. Health &
Acc. Ass'n v. Hite*, 184 Va. 614, 35 S.E.2d
743 (1945); *Standard Acc. Ins. Co. v.
VanAltena*, 67 F.2d 836 (7th Cir. 1933).

Appellant finally asserts that since the
evidence produced at trial suggests two op-
posing theories of causation the case of

*Dent v. Hardware Mutual Casualty Co.*, 86
Idaho 427, 388 P.2d 89 (1963) compels re-
versal. We do not agree. *Dent* involved a
fact situation somewhat analogous to the
instant action, but there are very signifi-
cant differences. In *Dent* we held an au-
tomobile insurer had no duty to pay bene-
fits for the death of an insured found un-
conscious in his automobile which had
come to an abrupt stop against a bridge
railing. The policy in *Dent* contained lan-
guage practically identical to that present-
ed herein. There, plaintiff's most favorable
expert witness opined that the cerebral
hemorrhage leading to the insured's death
could have occurred either before or after
collision and we held that the plaintiff had
not carried his bruden of proof and could
not recover. The decision in *Dent* relied
upon the doctrine of "equally probable
causes" first articulated in *Antler v. Cox,
27 Idaho 517, 149 P. 731 (1915).

■ The case at bar is different from
and distinguishable from *Dent* on at least
two grounds. In *Dent* there was no direct
evidence of why the insured's car ran into
the bridge. No one witnessed the collision
and there were no skid marks or other
objective evidence supporting plaintiff's
position that it was accidental. In order
for the jury to have found for the plaintiff
it would have had to infer from circum-
stantial evidence that the collision was ac-
cidental and then infer the accident caused
the hemorrhage. No such strained reason-
ing or inferences are required in the in-
stant case. Here, there was direct substan-
tive evidence that an accidental injury in
fact occurred to Erikson's right eye. Sec-
ondly, while we continue to adhere to the
rule of "equally probable causes" such does
not bar recovery in the instant case. In
substance that rule is nothing more than a
restatement of the burden placed upon a
plaintiff. It should not be utilized as a ve-
hicle for removal of a case from trier of
fact simply because an adverse party con-
troverts plaintiff's case with its own theory
of causation. The rule of *Dent* is that
where there is no evidence of causation a
jury must not be left to *conjecture* in

choosing between or among two or more possible causative factors. The evidence of the plaintiff must establish a single causative factor which attributes liability to a defendant. A plaintiff may not recover where his own evidence only shows that it is equally as probable that the damages were caused by one factor as by another. In contrast, however, in the case at bar the plaintiff has produced sufficient evidence of one probable cause and the defendant has established another. Therefore, it is for the jury to decide which is the more probable. *Whitlock v. Old American Ins. Co.*, 21 Utah 2d 131, 442 P.2d 26 (1968); *Beimdiek v. New York Life Ins. Co.*, 183 S.W.2d 379 (Mo.App.1949); *Moon v. Order of United Commercial Travelers*, 96 Neb. 65, 146 N.W. 1037 (1914); *Sullivan v. Modern Brotherhood of America*, 167 Mich. 524, 133 N.W. 486 (1911); *Reed v. U. S. Fidelity & Guaranty Co.*, 176 Colo. 568, 491 P.2d 1377 (1971).

Questions of causal relationships are essentially for the trier of fact. *Pollard v. Land West, Inc.*, 96 Idaho 274, 526 P.2d 1110 (1974). Erikson, as plaintiff, had the initial burden of proof on the issue but appellant as defendant likewise carried a burden of proof to establish the facts which it alleged as an affirmative defense, that it was excepted from liability because of loss caused by disease or infirmity. *Harman v. Northwestern Mut. Life Ins. Co.*, 91 Idaho 719, 429 P.2d 849 (1967); *O'Neil v. New York Life Ins. Co.*, 65 Idaho 722, 152 P.2d 707 (1944). See also, *Nat'l Benevolent Society v. Russell*, 180 Okl. 494, 71 P.2d 631 (1937); *Home Ben. Asso. v. Sargent*, 142 U.S. 691, 12 S. Ct. 332, 35 L.Ed. 1160 (1892); "Burden of Proof of Excepted Causes in Insurance Policies," 46 Columbia L.Rev. 802 (1946). A plaintiff's case is not to be regarded as insufficient as a matter of law merely because there is other testimony which if believed would authorize a different result. The weight to be accorded contrasting medical opinion is for the jury. It was within the sole prerogative of the jury to determine whether Erikson's blindness resulted from arteriosclerosis and was therefore excluded from coverage or whether it resulted from injuries sustained in the accident and therefore was within coverage. The verdict of the jury and the judgment entered thereon is supported by adequate, competent, albeit conflicting evidence and will not be disturbed on appeal.

The judgment of the trial court included an award to plaintiff of attorney's fees in the amount of $3,500. I.C. § 41–1839. Respondent having filed its motion here for attorney's fees on appeal and good cause appearing, therefore respondent is awarded the additional sum of $2,500 for attorney's fees on appeal. I.C. § 41–1839. *Haman v. Prudential Insurance Company*, 91 Idaho 19, 415 P.2d 305 (1966). *Stephens v. New Hampshire Insurance Company*, 92 Idaho 537, 447 P.2d 14 (1968). Upon remitter district court is directed to amend its judgment to reflect the addition of attorney's fees on appeal. Judgment is affirmed with costs to the respondent.

McFADDEN, DONALDSON, and BAKES, JJ., and SCOGGIN, District Judge (Ret.), concur.