623 P.2d 141

Russell DALTON, Plaintiff-Respondent,

v.

SOUTH FORK OF the COEUR D'ALENE RIVER SEWER DISTRICT, Defendant-Appellant.

No. 12897.

Supreme Court of Idaho.

Dec. 30, 1980.

Rehearing Denied Feb. 23, 1981.

Richard W. Sweney, Coeur d'Alene, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment against defendant-appellant South Fork of the Coeur d'Alene River Sewer District requiring it to reclassify plaintiff-respondent Dalton's property into a preferred rate category and further requiring the sewer district to refund to Dalton previously collected excess sewer charges. We affirm.

Dalton is the owner of two mobile home parks, Leisure Acres No. 1 and Leisure Acres No. 2, located within the city boundaries of Osburn, Idaho. When Leisure Acres No. 1 was established in 1964, Dalton provided that facility with its own sewer system. Its main pipe or collector was a six inch lateral which emptied into the Coeur d'Alene River. In 1972, the sewer district was created as a municipal corporation organized under the provisions of I.C. §§ 42–3201, et seq. In 1972 and early 1973, the District constructed a sewer line through Leisure Acres No. 1 and Dalton connected his sewer system to the District line. The District line transported that sewage to its treatment plant.

In February of 1973, the District adopted a sewer service resolution which defined the categories of users and fixed monthly service charges for those users. Two basic categories were established. Those categories were termed "existing collection systems" and "new collection systems" and were defined as follows:

"(g) *Existing Collection Systems.* The District will consider as served by an existing collection system, those properties which are connected to and are a part of a collection system owned, operated and maintained by a city, Shoshone County, the Elizabeth Park Sewer District, or Western Sanitation Corp. Two or more properties served by a private collection system will be considered as served by an existing collection system only if:

(1) A city, the Elizabeth Park Sewer District, or Western Sanitation Corp. will accept the existing private system as part of its facilities to be controlled, operated and maintained as a public sewer, or

(2) The private system is outside the jurisdiction of a city, the Elizabeth Park Sewer District, or Western Sanitation Corp., but the private system meets the construction standards for a public sewer as established by the Idaho Department of Environmental Protection and Health.

. . . . .

(k) *New Collection System.* The District will consider as served by a new collection system any property which is not served by an existing collection system, but for which a service connection has been constructed to a property line from a lateral main or interceptor sewer constructed at District expense."

The existing collection system areas (referred to as "sewered") qualified for a lower rate which paid for interceptor and treatment system maintenance. The new collection system areas (referred to as "unsewered") were assigned a higher rate to pay for the debt service incurred by collection system construction costs in addition to the interceptor and treatment system maintenance costs. The record indicates that the basic distinction between the two classifica-

tions rested upon whether or not the District had to install a collection system for the particular user.[1]

Initially all mobile home parks were assigned the same rate, but in June of 1974, the District decided that mobile home parks would also be subject to the sewered/unsewered classification. The sewered rate for these facilities was set at $4.25 per unit and the unsewered rate was set at $8.50 per unit. In June of 1975, Dalton was notified that his monthly charge for Leisure Acres No. 1 would be increased from $4.25 to $8.50 because the facility was classified as unsewered.

Leisure Acres No. 2 was developed by Dalton in the same area. The District informed Dalton that if he installed a lateral from Leisure Acres No. 2 to the District interceptor in compliance with Health and Welfare standards and also dedicated the line to the public, Leisure Acres No. 2 would be classified as sewered and billed at the lower rate. Dalton installed an eight inch lateral in compliance with Health and Welfare standards, but the line was never dedicated to the public. Dalton was billed the higher unsewered rate for Leisure Acres No. 2.

Dalton brought an action against the District alleging that the actions of the District were discriminatory and unreasonable in that he was being charged substantially more for sewer service than similarly situated property. The district court, following trial, found that Dalton was indeed paying a higher rate than other property similarly situated and concluded that the classification of Leisure Acres No. 1 and Leisure Acres No. 2, which required the payment of the higher rate, was unreasonable. The District was ordered to thereafter charge Dalton pursuant to the $4.25 sewered rate and to refund to him all charges previously paid in excess of that amount.

On appeal, the District argues that municipal ordinances setting sewer rates are presumed valid, that judicial review is available only to test the reasonableness of rate setting in light of constitutional prohibitions against the unequal application of the law, and that the sewered/unsewered classifications were justified on the basis of cost of service. In particular, the District asserts that it supplied Dalton with a collection system and that the higher rate charged to Dalton represented repayment to it for those construction costs. Dalton, however, claims that the District did not build a collection system for him and that it improperly classified him as unsewered while inconsistently classifying others as sewered.

■ A duly organized sewer district is empowered to fix rates and from time to time increase or decrease those rates. I.C. § 42–3212(*1*). As asserted by appellant Sewer District, utility rates set by the proper authority do enjoy a presumption of reasonableness and the party challenging that reasonableness bears the burden of establishing unreasonableness. *Shawnee Hills Mobile Homes, Inc. v. Rural Water District No. 6*, 217 Kan. 421, 537 P.2d 210 (1975); *City of Oakland v. City of Detroit, etc.*, 81 Mich.App. 308, 265 N.W.2d 130 (1978); *Bexar County v. City of San Antonio*, 352 S.W.2d 905 (Tex.Civ.App.1961); *King County Water District No. 75 v. City of Seattle*, 89 Wash.2d 890, 577 P.2d 567 (Wash.1978).

The memorandum opinion of the district judge stated that, "[T]he Court further agrees [with defendant Sewer District] that the test of 'reasonableness' is the accurate barometer for [judicial] review." Neither party on appeal suggests that another standard of review might be proper. Therefore, we need not consider whether the rate applied to Dalton should have been reviewed under any other test.

The issue on appeal is whether the evidence before the trial court supported its conclusion that Dalton established that classification of his mobile home parks as unsewered was arbitrary and unreasonable.

1. A collector line is that portion of the sewer system whose primary purpose is to receive sewage from individual residences or structures; an interceptor line is that portion of the system whose primary function is to transport sewage from collectors to the treatment plant.

■ Appellate review is necessarily limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1980). In this instance, the trial judge issued a memorandum opinion which contained findings of fact and conclusions of law as required by I.R.C.P. 52(a).

Although not separately listed and numbered, the following findings were embodied in the memorandum opinion:

1. Prior to District construction of the interceptor line, Dalton had installed his own sewer system for Leisure Acres # 1. That system did not meet Health and Welfare requirements, but did meet Idaho Plumbing Board requirements.

2. The District's interceptor sewage line doubled as a collector as it passed through or in the near vicinity of Dalton's property.

3. Dalton connected his then existing system to the District's line.

4. Pursuant to the Board's amending resolution trailer courts were to be charged $8.50 per unit "if unsewered and we put in the line." This is the category applied to Dalton even though Dalton and not the District put in the line. (The court is referring to the then existing sewer line in Leisure Acres No. 1 rather than the District interceptor line.)

5. In 1975 Dalton developed Leisure Acres # 2. The Board minutes of May 13, 1975, while somewhat confusing, indicate that Dalton certainly could have been led to believe that if he installed the 8–inch 100 foot lateral from Leisure Acres # 2 under the railroad tracks to the interceptor he would be charged the $4.25 rate. Dalton agreed to and did construct this line.

6. Neither project fell into the "existing collection system" or "new collection system" category. Both projects, however, have sewer systems not constructed at public expense.

7. There are at least three other private entities with some responsibility for maintaining collection systems for which the preferred rate was established. Western Sanitation Corporation did not meet Health and Welfare standards. There was no evidence concerning the standards met by Sunny Slopes Sewer Association or MKM Homes, Inc. From the evidence it was impossible to ascertain the distinction indulged in by the Board in arriving at the disparity in rates between those three entities and Dalton.

8. In each of the above instances maintenance of the line was not the District's responsibility and certainly the flow rate for mobile homes would place no greater burden on the system than would a single family dwelling.

9. Neither party prepared the necessary legal documents regarding the public dedication of the streets and lines in Leisure Acres # 2. It was unclear where this responsibility rested. Neither Sunny Slopes nor Western was required to make such a dedication.

10. The District denied the preferred rate to Dalton's Leisure Acres # 2, while at the same time granting such rate to Sunny Slopes who, for all practical purposes, is in the same situation, except that Sunny Slopes is outside city boundaries.

The District argued that the higher rate charged Dalton was justified on the basis of cost because it provided a collection system for Dalton's mobile home parks. However, Dalton argues, and the trial court found, that Dalton already had a sewer system in Leisure Acres No. 1, that he installed one for Leisure Acres No. 2, and in both instances connected those systems to the District interceptor. That finding is substantiated by the evidence. Although witnesses for the District testified that the interceptor line was maneuvered through the area at an increased cost in order to serve the area residents, other testimony indicated that Dalton granted the District an easement passing through his property, which provided a more direct and less costly route. Dalton further testified that his hookup line to the interceptor was not shortened nor the

cost lessened because of the departure of the interceptor line from the previously planned route.

The trial court specifically found that it was impossible to ascertain the distinction made by the District as between Dalton and other similarly situated users. This Court has repeatedly held that findings of fact made by the trial court will not be disturbed on appeal where there is substantial, competent, although conflicting, evidence to support those findings. *Cougar Bay Co., Inc. v. Bristol*, 100 Idaho 380, 597 P.2d 1070 (1979). The credibility of witnesses, the weight given to each witness's testimony and the inferences to be drawn from the evidence are all matters for the trial court. *Johnson v. Sweeney*, 91 Idaho 805, 430 P.2d 883 (1967). The factual findings of the trial court are supported by substantial and competent, albeit conflicting, evidence and the trial court's failure to accept the District's costs justification argument in the face of other conflicting evidence will not be disturbed. We hold that Dalton met his burden of proof as being treated in an unreasonable and discriminatory manner in being placed in an unsewered classification with the resulting higher rate structure.

The orders and judgment of the lower court are affirmed. Costs to respondent.

DONALDSON, C. J., BAKES and McFADDEN, JJ., and KRAMER, J. Pro Tem., concur.