641 P.2d 1007

**MERCANTILE STORES COMPANY, Plaintiff-Respondent,**

v.

**IDAHO FIRST NATIONAL BANK, N.A., Defendant-Appellant.**

No. 13579.

Court of Appeals of Idaho.

March 2, 1982.

John C. Ward of Langroise, Sullivan & Smylie, Boise, for defendant-appellant.

David W. Cantrill of Cantrill & Skinner, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

This case involves the question of liability for forgery losses on the account of the Mercantile Stores Company. The Idaho First National Bank honored the checks before the forgeries were discovered. Following trial, judgment was entered in favor of the Merc, holding the bank responsible for the losses. The bank appeals. We *affirm*.

In 1958 the Merc, by corporate resolution, authorized the bank to honor checks drawn upon the Merc's account where a facsimile signature as drawer was impressed upon the checks. The facsimile signature was that of the office manager for the Merc. The pertinent language of the resolution is:

"[t]he said bank shall be entitled to honor and charge the said account for any such checks, drafts, or other orders regardless of by whom or by what manner the facsimile signature thereon may

have been affixed thereto if such facsimile signature resembles the facsimile specimen impressed on this resolution and the corporation signature card furnished the depository bank."

The Merc also filed signature cards with the bank which contained both an impression of the facsimile signature and an original signature in the handwriting of the office manager.

In 1977, a former employee of the Merc removed a quantity of unnumbered and unserialized blank checks from the main office of the Merc without the knowledge or consent of the Merc. Using carbon paper and a stock dividend check he had received from the Merc, he traced the facsimile signature from the dividend check upon the stolen checks. He then deposited the forged checks into an account he had opened in the name of a former supplier of the Merc. Fourteen of these checks were drawn on accounts at eight different branches of the bank in cities where various Merc stores are located. Upon being forwarded to the bank for collection, the checks were honored and paid. The Merc discovered the forgeries as a result of the overdraft of one of the accounts. It called the bank, the police and the F.B.I., and discontinued the use of the facsimile signature copied in the forgeries. When the Merc demanded that its account be recredited for the amounts paid on the forgeries, the bank refused and this suit was filed.

Basically, the trial involved two issues. Was the Merc negligent in its control over the blank checks so as to contribute substantially to the ultimate forgery or the loss therefrom? Was the bank protected from liability for the forgeries by virtue of the corporate resolution of 1958?

The first issue triggered inquiry as to whether the losses became the responsibility of the Merc by virtue of the doctrine of preclusion. Under the Idaho version of the Uniform Commercial Code, a depositor may be precluded by his own negligence from asserting lack of responsibility for losses to his account which result from forged checks, when the drawee bank pays the

forged instruments in good faith and in accordance with reasonable commercial standards. The preclusive negligence can occur at two times. The first is where, before a check is honored by the bank, the depositor "substantially contributes" to the making of an unauthorized signature. I.C. § 28–3–406. This type of negligence acts as an estoppel against the depositor. However, Section 28–3–406 protects only a bank that acts in good faith and also in observance of the reasonable standards of its business. "Thus any bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel" imposed upon the customer. I.C. 28–3–406, comment 6.

The other instance of preclusion can occur after the check has been honored by the bank. If the depositor fails with reasonable care and promptness to examine his bank statements, discover an unauthorized signature, or report the discovery to the bank, he is precluded from shifting the loss to the bank. I.C. 28–4–406. Under that section, even though the bank might prove that the depositor failed to exercise ordinary care, the preclusion rule does not apply if the customer can establish that the bank failed to exercise ordinary care in paying the checks. I.C. 28–4–406, Comment 4.

■ Here, the trial court found that the Merc was not negligent in either regard, eliminating application of the preclusion doctrine to the Merc. The evidence in the record substantially supports that determination and it will be sustained on appeal. I.R.C.P. 52(a); *Dalton v. South Fork of the Coeur d'Alene River Sewer District,* 101 Idaho 833, 623 P.2d 141 (1980).

■ Absent the depositor's preclusion, loss for forgeries falls upon the bank. A bank is bound to know the signatures of its depositors. Payment of a forged check, however skillfully the forgery is executed, cannot be debited against the depositor if he is wholly free from neglect or fault. 10 Am.Jur.2d *Banks* § 603 (1963), pg. 568. Here the bank seeks to avoid that responsibility by virtue of the 1958 resolution, arguing that the resolution also precludes the Merc from asserting liability on the part of the bank.

I.C. §§ 28–1–102(3) and 28–4–103(1) provide that the provisions of the Uniform Commercial Code may be varied by agreement, except that obligations of good faith, diligence, reasonableness, and due care cannot be disclaimed. Both statutes provide, however, that the parties may by agreement determine the "standards" by which the performance of such obligations or responsibilities are to be measured. If the standards are manifestly unreasonable, the agreement is unenforceable. I.C. §§ 28–1–102(3), comment 2; 28–4–103(1), comment 2.

■ At trial, the office manager testified that the facsimile signatures impressed upon the Merc's checks were performed mechanically with an addressograph machine, not by hand or with a rubber stamp. She described the process as one where the machine "slams down" a metal plate, impressing the signature on the check through a cloth or plastic ribbon, similar to the action of a typewriter. There is no evidence that the "facsimile specimen" imprinted upon the resolution and the bank signature cards was done in any fashion other than that used to impress signatures on checks. For almost twenty years the bank honored the checks of the Merc prepared in the manner described by the office manager.

The forgeries in the instant matter were not accomplished by impressing a facsimile signature on the checks. They were done by manually tracing the facsimile from another check, through the use of carbon paper. The act of tracing the signature on the checks did not result in the placement of a "facsimile signature" on the checks, but rather resulted in the placing of a traced signature as drawer on the checks. The acts of forgery herein could have been committed in the same fashion if the forger had an original signature of the office manager from which to trace her signature.

The bank argues that it is protected by the resolution in honoring traced signa-

tures, simply because those signatures "resemble" the facsimile specimen imprinted by mechanical means. The bank asserts that the resolution gave rise to a standard of performance that insulates it from responsibility in failing to diligently detect the forgeries. Its position is unsound. It is without question that the language of the resolution created a standard of performance for the bank under certain circumstances. However, the facts here do not fit within that standard. Given the type of forgery that occurred, application of the standard to the facts of this case would be unreasonable, and therefore unenforceable. I.C. §§ 28–1–102(3) and 28–4–103(1).

The judgment is affirmed. Costs to respondent; no attorney fees.

BURNETT and SWANSTROM, JJ., concur.