656 P.2d 135

Irvin GOODWIN and Rose Goodwin,
husband and wife,
Plaintiffs-Respondents,

v.

NATIONWIDE INSURANCE
COMPANY,
Defendant-Appellant.

No. 13782.

Court of Appeals of Idaho.

Dec. 28, 1982.

Petition for Review Denied Feb. 17, 1983.

Dave R. Gallafent of Merrill & Merrill, Pocatello, for defendant-appellant.

Dean Williams of Kerr & Williams, Blackfoot, for plaintiffs-respondents.

SWANSTROM, Judge.

On August 16, 1973, Irvin Goodwin, then sixty-four years old, was injured in an accident in which his pickup was struck from the rear and rolled three times. At the time, he was insured by Nationwide Insurance Co. under a group policy providing for medical coverage and disability benefits in case of accidental injury. Nationwide promptly paid claims submitted for his medical expenses. Twenty-five months after the accident, Goodwin filed a claim with Nationwide asserting he was entitled to receive accident disability benefits for life because the accident had resulted in headaches that totally disabled him. When Nationwide refused to honor his claim, Goodwin sued and recovered a judgment in district court.

Nationwide filed this appeal, raising several issues. First, Nationwide contends that the trial court erred in relying upon lay testimony to determine the nature and extent of the alleged disability. Nationwide asserts that a disability claim must be supported by competent medical evidence. Second, Nationwide argues that there is inadequate evidence in the record to support the trial court's finding that Goodwin was totally disabled within thirty days of the accident as required by the policy. Specifically, Nationwide contends that there was no medical proof that bodily injuries suffered in the accident caused Goodwin's headaches, and that the record does not establish that the headaches were caused by the accident, independently of all other causes. Finally, Nationwide claims that the district judge was wrong in concluding—as a matter of law—that Goodwin had satisfied the notice and proof of loss requirements of the insurance policy.

Because the trial court's findings of fact were supported by competent and substantial evidence, we will not disturb them on appeal. The court's conclusions of law are supported by these findings. Therefore, we affirm the judgment.

I.

Before addressing the substantive issues, we will survey the contentions and evidence presented by the parties. Nationwide concedes that Goodwin is totally disabled; but Nationwide denies that Goodwin is entitled to *accident* disability benefits. For several months prior to the accident in August, 1973, Goodwin had been receiving *sickness* disability benefits from Nationwide, under a provision of his group policy providing for payment of $400 a month (for a maximum of twenty-four months) for total disability due to sickness. Goodwin, a heavy smoker, was suffering from a severe case of emphysema, which made it impossible for him to carry on his work as a dairy farmer. Nationwide paid Goodwin monthly sickness disability benefits until they expired in December, 1974. Goodwin testified that his emphysema condition improved greatly after he quit smoking in 1974. The district judge found that the headaches suffered by Goodwin after the accident in 1973 had become a second, concurrent cause of his disability; and the judge concluded that Goodwin was entitled to accident disability

benefits after the sickness disability benefits expired. Nationwide contends that Goodwin was never disabled by his headaches, and that the causes of his present disability are emphysema, arthritis, and age.

The evidence at trial showed that after his pickup rolled on August 16, 1973, Goodwin remained unconscious, slumped over the steering wheel, for nearly an hour. Despite the force of the impact, it appeared, however, that he sustained only minor injuries, a cut over his left eye, and contusions and bruises to the head and body. He was hospitalized for one day, treated and released.

Goodwin relied primarily upon his own testimony, and that of his wife and son, to establish that headaches had disabled him ever since the accident. Goodwin testified that he has had a headache everyday since the accident and that his head aches constantly, preventing him from performing his farm work. He said that after each attempt to work he has "ended up in bed for a couple of days." Where before the accident he suffered only rarely from headaches, now he must take three types of drugs daily to cope with headache pain. Goodwin also testified that he believes he is "pretty much cured" from emphysema and would be able to work were it not for his headaches.

Goodwin's wife, Rose, and son, Dean, offered similar testimony concerning Goodwin's condition. Mrs. Goodwin testified, without objection, that her husband's head hurts all the time and that he takes aspirin and valium every day. She stated that he has not been able to work since the accident and that when he tries, his head begins "pounding and beating," and he must lie down. She also said that he never had headaches before the accident. Dean Goodwin testified that his father had not been able to return to his regular duties after the accident and that he could no longer run a dairy business. Dean also stated that whenever his father has tried to work he has had to go to bed because of the headache pain. Dean said that his father's em-

physema improved after he quit smoking and that only the headaches have kept him from working.

Several doctors also testified. Although none of the doctors was able to pinpoint the source of Goodwin's headaches, and each had a different theory about their origin, none doubted that Goodwin actually experienced headache pain.

Dr. Merrill Packer, Goodwin's personal physician for a number of years, testified that he had treated Goodwin for emphysema prior to the accident, but that he believed the emphysema, though still present, was no longer bothering Goodwin. Dr. Packer stated that he had never treated Goodwin for headaches prior to August 16, 1973. He admitted, however, that the first indication in his record that Goodwin was suffering headaches is a note he made on February 23, 1974, more than six months after the accident. Thereafter he recorded numerous complaints by Goodwin concerning his headaches. Dr. Packer said that on April 25, 1975, Goodwin told him that he had been having persistent headaches since the accident, and the doctor noted that the headaches seemed to be getting worse. He prescribed several drugs, valium, fiorinal, and codeine, in the course of his treatment of Goodwin's condition. In conclusion, Dr. Packer testified that there was no doubt that Goodwin was in fact suffering from headaches, even though there appeared to be no objective reason for them. In Dr. Packer's opinion, the headaches became Goodwin's prominent problem and the prominent cause of his disability. Dr. Packer stated that though it is difficult to discern the cause of headaches, the pain is real to the sufferer and can be disabling. Dr. Packer also indicated that the existence of several gaps in his records, concerning Goodwin's headaches, did not necessarily mean that Goodwin was not being treated for headaches during those periods. Finally, Dr. Packer admitted it was not until September, 1975, approximately two years after the accident, that he first sent a physician's "statement of disability" form to Nationwide indicating that Goodwin was

suffering from head and neck pains related to the accident in 1973.

Two physicians offered testimony in Nationwide's behalf. Dr. James Lansche treated Goodwin for his headaches from April 28, to May 4, 1975. Dr. Lansche took x-rays of Goodwin's skull and neck, but detected no abnormalities, other than an arthritis problem in the neck. Dr. Lanchse treated Goodwin with several types of physical therapy, but Goodwin complained that the pain increased after each treatment. This lead Dr. Lansche to conclude that Goodwin's headaches were due to a psychological disorder rather than organic causes. Dr. Lansche stated that he could find nothing objective, other than Goodwin's story, to connect the headaches with the 1973 accident. Moreover, Dr. Lansche stated that in his opinion the headaches produced only a small disability. In conclusion, he testified that though it was possible that Goodwin's headaches were caused by his cervical arthritis, which may have been aggravated by the accident, he did not believe that this was their origin. He concluded that Goodwin's headaches were of a psychosomatic kind, "related to a muscle contraction headache." In his opinion, the headaches were caused by a "muscle contraction problem related to some inner psychic turmoil."

Dr. Harvey Hatch also testified for Nationwide. Dr. Hatch examined Goodwin only on one occasion, April 27, 1976. He stated that Goodwin still had emphysema at the time. Dr. Hatch testified that Goodwin's emphysema condition was permanent, although it may have improved somewhat after he quit smoking. He found no objective evidence concerning Goodwin's headaches. He admitted, however, that all headaches are subjective, and cannot be diagnosed objectively.

From this evidence, the district judge made several findings of fact. The court determined that Goodwin had suffered a severe impact in the accident of August, 1973, resulting in bodily injuries to the head and neck areas. Prior to the accident, Goodwin did not suffer from any unusual

headaches, but commencing immediately after the accident and until the time of trial, Goodwin suffered from severe chronic headaches which were totally disabling. These headaches were a concurrent cause of Goodwin's total disability from the time of the accident until mid-1975, when the emphysema condition improved, and they then became the sole cause of his disability. The court concluded that it had no cause to disbelieve Goodwin's description of his headaches; and it accepted his testimony about them, despite the gaps and lack of documentation in Dr. Packer's records. The court noted the lack of objective medical evidence connecting Goodwin's headaches to a bodily injury but nonetheless concluded: "The accident caused bodily injury to the spinal and muscle portion of the neck, also to the head, and likely tension of some nature resulted causing the headaches."

## II.

Nationwide first contends that the Goodwins' lay testimony was insufficient to establish the disability claim; and that such claims must be supported by competent medical proof. To support this contention, Nationwide relies primarily upon *Sykes v. C.P. Clare & Co.,* 100 Idaho 761, 763, 605 P.2d 939, 941 (1980), in which the court held that *"[i]n workmen's compensation cases,* the burden is on the claimant to present expert medical opinion evidence of the extent and duration of the disability to recover income benefits for such disability." [Emphasis added.]

At the outset, we note that this is not a case where lay testimony alone was presented in support of a claim. As further discussed *infra,* there was medical testimony presented for, as well as against, the claim. However, to meet Nationwide's point directly, we do not believe this action for insurance benefits is the same as a claim for workmen's compensation. Our research discloses no general rule that lay testimony is insufficient *per se* to establish a disability claim under an insurance policy. Although the courts are somewhat in disagreement, the more widely accepted rule appears to be as follows:

The burden is on the insured to prove his disability. But lay testimony may suffice in this regard, and it is not overthrown by medical records or testimony of a physician offered by the insurer.

21A J. Appleman, Insurance Law and Practice, § 12544, at 370 (1980).

An instructive case is *Ford Life Ins. Co., Inc. v. Smith,* 369 So.2d 808 (Ala.Civ.App. 1979). There Smith had a disability policy issued by Ford Insurance to cover car payments if Smith became disabled. Ford Insurance made some payments for Smith, who became disabled from a heart condition, but later discontinued them. A trial resulted where Smith's former physician testified that, in his opinion, Smith's disability ended in April, 1975. Smith did not rebut this testimony with his own expert witness, but testified in his own behalf that he had not worked since January, 1975, that he had tried to work but had not been able to do so, and that he was still having chest pain and difficulty with his heart. The jury's verdict favored Smith. Ford Insurance contended on appeal that because its expert testimony was not controverted, the jury was not at liberty to disregard it, as it apparently did in reaching the verdict. The court held that the expert testimony was not concerning a subject exclusively within the knowledge of experts and that a lay witness was competent to testify as to his own disability to perform work. The court held that it was within the province of the jury to weigh Smith's testimony against the expert's opinion. The court thus affirmed the verdict, despite its own belief that Smith's evidence on his inability to work due to a disability was less than overwhelming. 369 So.2d at 810.

We conclude that the Goodwins' testimony was not insufficient *per se* to establish the disability claim. Such testimony was entitled to be weighed against conflicting medical evidence. Accordingly, we decline to disturb the findings of the trier of the facts on this issue.

### III.

The accident disability provision of Goodwin's insurance policy with Nationwide contained the following language:

*Accident Disability.* If within *thirty (30) days* of the *date of an accident,* a Member becomes *totally disabled* by *injury,* the Company will pay, for the period beginning on the applicable day of disability stated in the Schedule of Benefits, the applicable Monthly Benefit for so long as the Member is so disabled and is under the regular care and personal attendance of a physician.... [Emphasis added.] "Injury" means, unless otherwise specifically defined, bodily injury sustained by the Insured directly and independently of all other causes through accident occurring while his insurance is in force.

### A.

Nationwide argues that the evidence in the record is inadequate to show that the accident caused injuries which totally disabled Goodwin "within thirty days" of the accident. Nationwide contends that the policy provisions are explicit and should be given effect. Nationwide argues that the only evidence in the case to show that Goodwin's headaches began immediately after the accident is Goodwin's own testimony and that of his family. Nationwide points out that Dr. Packer, who saw Goodwin many times after the accident, made no record of any headache complaints until more than six months later. Nationwide asserts that Goodwin could not have experienced severe, disabling headaches after the accident without any record of headache complaints appearing in Dr. Packer's notes. Nationwide argues that this absence of entries in the doctor's records for the first six months after the accident "establishes beyond any reasonable doubt that the plaintiff's headache pain in and of itself was not totally disabling during that period of time." Thus, Nationwide contends, there is insufficient proof in the record to show that Goodwin even had headaches within thirty days of the accident, let alone that he was totally disabled by them within that period.

In part this argument is premised upon Nationwide's contention that expert

medical testimony is required to establish a disability claim under an insurance policy. We have already rejected that argument. It was proper for the district judge to consider Goodwin's own testimony, and that of his wife and son, concerning the duration and extent of his disability. After weighing this evidence against the lack of documentation in Dr. Packer's records, the district judge decided to accept Goodwin's version of the facts. When Goodwin's headaches began, and how severe they were, were factual determinations to be made by the trial judge. While the evidence supporting Goodwin's claim is less than overwhelming, we cannot characterize it as completely without substance. As an appellate court, we cannot retry the facts of the case. Because the district judge's finding that Goodwin was disabled by headaches within thirty days of the accident is supported by competent, substantial, although conflicting, evidence, we will not disturb it on appeal. *Dalton v. South Fork of Coeur d'Alene River Sewer Dist.,* 101 Idaho 833, 623 P.2d 141 (1981); I.R.C.P. 52(a).

### B.

Nationwide next argues that Goodwin's disability claim must fail because there is no medical proof that bodily injuries suffered in the accident *caused* his headaches. Nationwide contends that to recover under the policy, a claimant must show that his disability is due to an injury caused by accident. Nationwide points out that the only injuries suffered by Goodwin in the accident were a cut above his eye and bruises to his head and body. Nationwide argues that there is no medical testimony in the record establishing a correlation between Goodwin's injuries in the accident and his headache complaints. None of the doctors, Nationwide correctly points out, was able to discern any objective cause for Goodwin's complaints. Dr. Packer identified muscle strain or arthritis aggravation resulting from accident injuries as *possible* causes of the headaches. Dr. Lansche, on the other hand, believed the headaches to be psychosomatic, attributing them to some inner psychic turmoil.

Concerning the cause of Goodwin's headaches, the district judge concluded:

The Court is of the view that the occurrence of an accident which inflicted tremendous forces upon the body of the plaintiff and the commencement immediately thereafter and the continuation to this time of severe chronic headaches are circumstances which give rise to a very strong inference that the bodily injury sustained in the accident caused the headache. . . . The court is of the opinion that more likely than not the headaches are a result of bodily injury sustained by plaintiff in the accident.

In *Erikson v. Nationwide Mutual Ins. Co.,* 97 Idaho 288, 543 P.2d 841 (1975), the court said:

The burden upon plaintiffs in actions [to recover on an accident insurance contract] is to show by a preponderance of the evidence that its [sic] theory of causation is more probable than it is not. [Citations omitted.] Proof of medical *certainty* is not required.

97 Idaho at 293, 543 P.2d at 846.

■ There was evidence, albeit disputed, to show that before the accident Goodwin rarely suffered from headaches but that after the accident he began to suffer from severe, chronic headaches. The headaches were severe enough that his doctor prescribed several drugs to alleviate the pain. Moreover, the accident itself cannot be described as minor. Goodwin's pickup rolled three times, and he received a blow to the head which rendered him unconscious for nearly an hour. As to the accident, and as to the existence of severe headaches thereafter, the claimant, Goodwin, was a competent witness. He was able to perceive, recollect, and communicate regarding the occurrences involved. *See Clark v. Gneiting,* 95 Idaho 10, 13, 501 P.2d 278, 281 (1972).

■ The medical evidence concerning the source of Goodwin's headaches was far from definitive. The limits of medical knowledge prevented the testifying physicians from being precise in their evalua-

tions. Both Dr. Packer and Dr. Lansche testified that it is common for people to experience headaches where there is no objective evidence of their cause. In such circumstances we now hold that where lay persons are competent to testify about a condition, and the lay testimony, coupled with the other evidence in the case, is sufficient for the trier of the facts to draw the inference that the condition was caused by an accident—and such causation is neither confirmed nor excluded by expert medical testimony—then we will uphold the findings made by the trier of the facts.

■ We conclude, therefore, that there is sufficient evidence in the record to support the district judge's finding that, more probably than not, the head injuries Goodwin received in the accident were the cause of his headaches. The trial court was correct in concluding that Goodwin met his burden of proof, as set forth in *Erikson,* despite the lack of definitive medical evidence.

### C.

Nationwide next argues that Goodwin's claim must fail because there is no evidence in the record that his headaches were caused by the accident "directly and independently of all other causes," as required by the policy. Nationwide points to testimony by Dr. Packer that Goodwin suffered from arthritis prior to the accident, suggesting that perhaps arthritis, aggravated by the accident, caused Goodwin's headaches. Nationwide contends that because preexisting arthritis may have been partially responsible for the headaches, Goodwin did not satisfy his burden of showing that they were caused by the accident, directly and independently of all other causes.

In *Erikson v. Nationwide Mutual Ins. Co., supra,* the court construed language identical to that in Goodwin's policy. The court determined that language restricting coverage to injuries caused by accident directly and independently of all other causes, "nevertheless has no greater meaning than the requirement that an accident must be the dominant cause of the injury incurred or the active efficient cause that precipitat-

ed the resulting loss." 97 Idaho at 292, 543 P.2d at 845. Moreover, as the Washington Supreme Court has stated:

> The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such a case, disease and low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.

*Tucker v. Banker's Life & Casualty Co.,* 67 Wash.2d 60, 406 P.2d 628, 630 (1965); *Graham v. Police & Firemen's Ins. Assn.,* 10 Wash.2d 288, 116 P.2d 352, 355 (1941).

The district court did not make a specifically worded finding on this question; but the memorandum decision plainly indicates that the judge determined the accident to be the predominant cause of the disability. He referred in his decision to testimony concerning the arthritis and implicitly determined the arthritis to be a "passive ally" of the injuries sustained by the accident.

■ We believe the record contains sufficient evidence to establish that Goodwin's accident was the "dominant" or "active efficient cause" of his headaches. It is not disputed that Goodwin received a blow to the head in the accident, nor that his severe headaches began after the accident. The medical evidence was not clear as to whether this head injury directly caused the headaches or whether it caused them indirectly by aggravating Goodwin's arthritis. In either event, the judge's finding as to the predominant cause of the disabling headaches will not be set aside.

### IV.

Nationwide argues that Goodwin failed to comply with the notice and proof of loss provisions of the insurance contract, and, therefore, cannot recover for his disability. The policy contains several notice and proof of loss provisions.

Written *notice of injury* or of sickness upon which claim may be based must be given to the Company within *twenty days* after the occurrence or commencement of any loss for which benefits arising out of each such injury or sickness may be claimed, or as soon thereafter as is reasonably possible. [Emphasis added.]

Written *proof of loss of time on account of disability* or of hospital confinement for which claim is made must be furnished to the Company within *ninety days after the termination of the period for which claim is made.* Written *proof of any other loss* on which claim may be based must be furnished to the Company not later than *ninety days after the date of such loss.* [Emphasis added.]

The policy also contained this "escape clause."

Failure to furnish notice or proof of claim within the time provided in the Policy shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to furnish such notice or proof and that such notice or proof was furnished as soon as was reasonably possible.

On September 4, 1973, Nationwide first received written notice of Goodwin's injury in an auto accident. This notice consisted of a hospital insurance form, which indicated that Goodwin had been in an auto accident, that he was hospitalized from that day until the following afternoon, and that he was treated for contusions above the left eye and in the region of his right flank. Nationwide thus received, within twenty days, notice of an accident which had produced trauma. Nationwide did not, however, receive written proof of loss until October, 1975, when Goodwin filed a "statement of claim" indicating he was suffering from disabling headaches.

The trial court held that the receipt by Nationwide, eighteen days after the accident, of the hospital insurance form satisfied the twenty day notice requirement. The trial court also held that, given the complex nature of Goodwin's claim, "it was not reasonably possible for plaintiff to fur-

nish notice of proof within ninety days and that the notice of proof ultimately furnished was furnished as soon as was reasonably possible." Thus, the trial court determined that Goodwin had satisfied both the notice of injury and the proof of loss provisions of the policy.

Nationwide contends that Goodwin did not satisfy either requirement. The company asserts that the hospital insurance form was not a sufficient notice of injury because it failed to specify headache pain upon which Goodwin based his disability claim. We believe, however, that the notice was both timely and adequate. The policy provision states only that the insured must give "written notice of injury or sickness upon which claim *may* be based." [Emphasis added.] It does not require that the insured describe his injury in such detail as to specify a disability. Rather, the purpose of the notice requirement is to give the insurer a timely opportunity to investigate an injury which may give rise to a subsequent claim of disability. Upon receiving notice of an accident that has produced injury, an insurer can, if it so desires, investigate and determine the nature of the accident and the extent of any injury. In this case, Goodwin notified the company in writing that he had been involved in an automobile accident which produced an injury serious enough to require hospitalization from that day until the afternoon of the following day, and that contusions of the head and flank were treated. This notice gave the insurer a reasonable chance to investigate the accident and the injury. It served the purposes of such a notice. *See e.g., Sutton v. Fire Ins. Exchange,* 265 Or. 322, 509 P.2d 418 (1973). We conclude the trial court was correct in holding that the notice was sufficient under the policy.

Finally, we look at Nationwide's contention there was a failure to comply with the proof of loss requirements of the policy. As we noted the trial judge held that, under the escape clause, the proof of loss was furnished "as soon as was reasonably possible" and was timely. The threshold question, however, is whether there was even a

need to apply the escape clause. We think not.

Idaho Code § 41–2111 requires a disability policy to contain a provision that "*written proof of loss must be furnished* to the insurer . . . in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within ninety (90) days after the termination of the period for which the insurer is liable* and in case of claim for any other loss within ninety (90) days after the date of such loss." [Emphasis added.]

The language used in the policy, while closely conforming to the statute, says: "Written proof of loss of time on account of disability or of hospital confinement . . . must be furnished within ninety days after the termination of the period for which claim is made." Reading the policy as a whole does not disclose that any different meaning should be given to this language than should be given to the statutorily required language. Absent evidence to the contrary, we will presume that Nationwide was merely restating in its own language what the statute required. The policy language cannot be construed to the derogation of an insured's rights under the statute. I.C. § 41–2133. Therefore, we will read the policy language as though it fully conformed to the statute. Our focus will be upon the meaning of the statutory language "within ninety (90) days after the termination of the period for which the insurer is liable [. . . for which claim is made.]"

█ A statute will be given its plain meaning if not ambiguous. *Worley Highway Dist. v. Kootenai County*, 98 Idaho 925, 576 P.2d 206 (1978). The plain meaning of the statute is that proof of claim for a disability may be submitted at any time within the duration of disability covered by the policy, and for ninety days thereafter. We note, however, as a caveat, that the statute does not displace the defense of laches where an insurance company shows substantial prejudice from "late" submission of proof of claim. No prejudice is shown in this case; the trial court expressly found there was none.

We are not asked to decide today, and we do not intimate, what the extent of an insurance company's liability might be for benefits allegedly accruing more than ninety days before the proof of claim is submitted. In this appeal Nationwide has contested only the adjudication of liability, not the amount of the judgment.

The plain meaning we ascribe to the statute is consistent with the interpretation of similar statutes in cases involving limitation of actions upon disability policies. *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807 (Minn.1977); *Continental Casualty Co. v. Freeman*, 481 S.W.2d 309, 311–12 (Ky.App.1972); *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979). These cases are not in point, but are analogous.

In *Laidlaw* the plaintiff was injured and he claimed that the injury and resulting psychological problems rendered him totally disabled. The insurer argued that suit on the claim was barred by a limitation of actions. Pursuant to statute, the policy stated that no action could be brought more than three years "after the time written proof of loss is required to be furnished." The proof of loss provision was identical to that required by I.C. § 41–2111. The insurer argued that "the period for which the [Company] is liable" referred to each monthly period for which it could demand proof of continuing disability under the "payment of claims" provision. If so interpreted, the plaintiff's action would have been barred.

The court rejected the argument, concluding that "the period for which the [Company] is liable" meant the aggregate period of liability and that the statute of limitations did not begin to run until ninety days after the end of such period. *Laidlaw*, 255 N.W.2d at 811. The court noted that in the case of lifetime disability proof of loss would not have to be filed until ninety days after the death of the insured, at which time the statute of limitations would begin to run. Since the insured was still alive when the suit was filed, the court concluded that it was timely.

In *Continental,* the court dealt with similar language and noted that it was not ambiguous and should be construed as "meaning just what it says." The court concluded: "The most natural import of the expression 'the period for which the Company is liable' is the total continuous period, be it five days or five years." 481 S.W.2d at 312.

We thus conclude that Goodwin's proof of loss, filed twenty-five months after the accident was within the policy limits. Since Goodwin's disability was continuous, "the period for which claim is made," i.e., the aggregate period of disability, had not terminated at the time Goodwin filed his claim. It was thus unnecessary for the trial court to attempt to circumvent the ninety-day proof of loss provision by applying the policy's "escape clause." Because there is another basis on which to affirm the result the trial court reached, we need not determine whether the trial court's reasoning was correct. When the result reached by the trial court is correct, but entered on a different theory, we will affirm it on the correct theory. *Matter of Revello,* 100 Idaho 829, 606 P.2d 933 (1979). We thus hold that Goodwin complied with both the notice of claim and proof of loss provisions of the policy.

The Goodwins have requested that they be awarded reasonable attorney fees incurred on this appeal, under I.C. § 41–1839, in addition to the fees awarded by the trial court. The Goodwins are entitled to such fees. *Erikson v. Nationwide Mutual Ins. Co., supra.* The amount of fees on appeal shall be determined in accordance with I.A.R. 41(d).

The judgment of the district court is affirmed. Costs and attorney fees to respondents Goodwin.

WALTERS, C.J., and BURNETT, J., concur.